We will take up Idaho Conservation League v. Poe. Good morning, your honors, and may it please the court. My name is Frank Garrison, and I represent Appellant Shannon Poe. I would like to reserve three minutes for rebuttal. I'll try and watch my time. The district court should be reversed for the reasons provided in our briefing. Today, I would just like to make three points in support of our position. Ribechek v. EPA, in which this court found the term addition ambiguous and applied broad deference and found that the resuspension of pollutants within a water body may be the discharge of a pollutant, does not survive the Supreme Court's precedent in the Kesuke tribe and LA County. And what's your best argument for that? In both cases, the court held that polluted water, so water that had pollutants in it, and that was transferred through a point source and then returned to the same water, was not the addition of a pollutant. Okay, but here, this is quite different, I believe. Here, I mean, to use the example of two cases you just cited, you could like this and put it over here, you got those cases. But if you took this and you started digging into the wood here and churn it all up and so on, then you got the case before us. You're digging into the subsurface, stirring things up, doesn't that provide a significant distinction between the two Supreme Court cases you decided in our case? I don't think so, Your Honor. So the relevant jurisdictional hook is the waters of the United States. And my friends on the other side tried to make the argument that the riverbed or the streambed is not part of the waters of the United States. Well, it is, but the problem that I see with your case is that the process of this dredge mining is it goes, it digs into the hard rock parts of the river and it brings materials out that weren't otherwise flowing within the river. Well, it does go into the riverbed and it goes down to the bedrock, but it does not breach the bedrock. There's cracks in the bedrock that where riverbed materials go into that Mr. Poe would get out with a nozzle, but he never breaches the bedrock. He goes into the streambed, which the streambed and the riverbed are naturally always re-suspending sediments. The weather is always re-suspending sediments within the riverbed. So, you know, we think the riverbed has to be part of the waters of the United States. It's intermingled, it's saturated with the water, and we understand that he does go into the riverbed, but as far as the jurisdiction is concerned, that is still part of the waters of the United States. Does he sometimes go in with a crowbar? But to the riverbed materials, he'll break those up and then suck them through his suction dredge, which then he puts through his sluice. Let's argue, let's put aside the waters of the United States issue. You're asking us to, based on those two Supreme Court cases, to apply Miller versus Gamie and overrule our Ribachite case, which I think you conceded in your briefs is exactly on point here. Well, you need to overturn that one in order to be successful, right? I'm not necessarily sure it's exactly on point. It was a facial challenge to all plaster mining, and this is in-stream suction dredge mining. But we do think that applying the ordinary meaning of addition to increase materials or pollutants in the water body severely undercuts Ribachite. I think you're moving a little bit off of the question I asked. Ribachite dealt with the very issue we're talking about here, right? It dealt with all plaster mining. OK, so so basically we have controlling precedent. We're just a three judge panel. We can't overrule that, unbiased can't, unless under Miller versus Gamie, we've got superior authority, in this case, the Supreme Court, that basically makes it makes it the Ribachite could no longer have validity. And I'm struggling with how those two cases changed the result in our case in Ribachite. Because they applied the ordinary meaning of the term addition and Ribachite found the term. It applied a meaning and they gave it to our court and we're bound by it, are we not? You're not bound by it under Miller v. Gamie because the mode of analysis and applying the ordinary meaning and the amount of deference to the statutory term is it's different. And the Supreme Court said we can apply the ordinary meaning of addition, which means to increase. Ribachite said the term is ambiguous. And that mode of analysis is completely they just they don't jive. So forgive me, counsel, you seem to be saying that notwithstanding what we said in Ribachite, which dealt with the construction that you're talking about, that that was just the wrong analysis. And now we've got these two Supreme Court cases that say that we can rethink it. Arguendo, if we say that the two Supreme Court cases you cited do not compel a Ribachite and that we cannot overrule it, then what do we do with this case from your perspective? Well, two things. I would add that Sackett v. EPA also said that when terms are ambiguous under the Clean Water Act with terms like addition and waters of the United States, clear statement rule applies. So we also think that undercuts Ribachite and that applying Chevron deference is wholly inappropriate and Ribachite should be overruled because of that case as well. And we're we're overruling Ribachite for your request because of what? The mode of analysis. So we can't do that. I think this court has done that in authority that a three judge panel can overrule Ribachite unless there's superior. Law, from this case, the Supreme Court that compels that, I would say, U.S. v. Castillo, this court decided that because previous courts hadn't applied Kaiser deference to, I believe it was a sensing guideline, they said that those cases were overruled, that they weren't bound by those cases because they didn't apply the proper statutory analysis in that case. It's a criminal law case for our analysis in this case. Well, Your Honor, Sackett makes clear that this statute has criminal applications. And you need to interpret statutory terms the same, whether in a civil or criminal context. So, you know, we don't think it can be different. And, you know, fair notice, if you can apply the ordinary meaning of a term, you know, I think courts are bound to do that. Okay, let's just, again, I know you want to use your time wisely. Arguendo, if we can't overrule Ribachite, then what do we do? Well, our alternative argument also says that, you know, this is dredge material and there is no precedent on that in this court. So you could alternatively rule that he was, that Mr. Poe was discharging dredge material and the case would be dismissed. But if you can't overrule... Because it's not a pollution, it's dredge material. Is that your argument? Yes. But isn't that part of Ribachite, too? I mean, Ribachite was a 402 case, right? It was, but it didn't address what was being discharged. There was no, I do not believe there was any challenge over what material it was or who had jurisdiction. Ribachite was long before Correa-Alaska, which said that, you know, the agencies, the EPA administers permits under 402, Army Corps administers permits under 404, and there can't be dual permitting schemes. And Correa-Alaska said our deference goes to the agency's interpretation of this. Well, I think that... Correa-Alaska supports the other side. But I would say now that Kaiser, if you look at the regulations, the current regulations established in 2008, the ordinary meaning of those regulations, which say that dredge material is material that's excavated from the waters of the United States, there's no deference. I mean, if you apply the ordinary meaning of that regulation, then suction dredge mining definitely falls within it. He dredges material from the bottom of the of the river, and that is the same material that is discharged from his suction dredge. You seem to be doing the same thing with Correa-Alaska that you wanted to with Ribachite, that you've got two agencies, the EPA and the Corps, that have long since concluded that there was enough ambiguity and they decided as between them who was going to have jurisdiction. You seem to be challenging that as well. Is that correct? No, we cite Correa-Alaska because it held that both EPA and Army Corps can't permit the same discharges. But it didn't, the agencies did agree in that case that what was being discharged was fill material. But I don't think it had, you know, it accepted the agreement in that case. Did they not agree that the EPA was going to handle it? That as between the Corps and the EPA, was there not an agreement that the EPA was going to handle it? There was an agreement and the court accepted that agreement. Now, what do we do with that? I don't think you get to that in this case, Your Honor, because the regulations speak to who has jurisdiction over dredging material. Those regulations are not ambiguous. They say that dredging material is material that is excavated from the United, the waters of the United States. And that is, that permitting authority, it falls under 404 in the Army Corps jurisdiction. Excuse me, counsel, I hear you repeatedly saying what such and such a term is not ambiguous. And yet we have Ribicheck, we've got Corps and others that say it is ambiguous and they have made it, they've interpreted it in a way that doesn't fit with what you want. And that's what I'm struggling with. How can we help you if we were inclined to do so based upon binding circuit precedent? Well, again, we disagree that Ribicheck is binding circuit precedent at this point, we think the Kesuke tribe in L.A. County, both under, at the very least, undercut the mode of analysis in those cases. OK, we're just asking, if we disagree, you lose, right? I do not think we lose. Ribicheck, what do you get? Ribicheck was a facial challenge to plaster mining in general. It did not directly hold, we don't think, that this type of suction dredge mining. It would be the addition of a pollutant. So we think you could distinguish Ribicheck if you had to. If you were writing the opinion, how would you do that? That it was a broad based challenge to plaster mining in general and didn't directly discuss in-stream suction dredge mining. But, you know. So it's the type of plaster mining that you're trying to, if you will, suction out. Well, I think Ribicheck did hold that the resuspension of pollutants could be, may be, the discharge of a pollutant. We don't think it is here. And might be at 402. I don't think Ribicheck held that. But, you know, all we're asking the court to do is apply the ordinary meaning of the term addition. And if the court does that, then we think we win. And Ribicheck did not do that. The mode of analysis that Ribicheck deployed, applying Chevron deference, is just no longer good law, especially over the term addition. And SACIT VEPA says that when terms in the Clean Water Act could subject ordinary activities to criminal and civil liability, then courts should not apply deference. They should apply a clear statement rule. We just do not see how Ribicheck survives current Supreme Court precedent. OK, counsel, you want to reserve three minutes? Yes, I'll reserve the remainder of my time. OK, thank you. I think we covered all three of your points. Thank you. Thank you. May it please the court. Brian Hurlbut for Eppley's Idaho Conservation League. I'd like to start by talking about, I think it's helpful to think about the term addition as it's used in the Clean Water Act and why that matters here. The Clean Water Act prohibits any discharge of any pollutant. That's in Section 1311, 33 U.S.C. 1311. Discharge is defined as the addition of a pollutant to water in the United States. And that's why we're talking about addition here. And in Ribicheck, this court got it right when it interpreted that term addition, which is nowhere further explained in the Clean Water Act. And just to be clear about what was going on in Ribicheck, the EPA had adopted regulations that set 402 permit limits for placer mining, which includes suction dredge mining. Suction dredge mining is one type of placer mining. It was not at issue in Ribicheck whether 402 versus 404 was the proper permitting scheme for suction dredge mining. But EPA was, in fact, regulating them under Section 402. And the placer miners there made the same arguments that are being made here that in addition does not include materials from a stream bed. And just a quote from Ribicheck, this is 904 F. 2nd, 1276 at page 1285. Just to be clear about what was covered in Ribicheck, quote, placer miners excavate the dirt and gravel in and around waterways, extract any gold and discharge the dirt and other non-gold material into the water, end quote. That's what Mr. Poe's doing here. He's using a suction dredge, a particular type of placer mine, but he's extracting riverbed materials. Council, as you heard, your opponent suggests, if I understood him correctly, that there's a distinction here. This is a different aspect of placer mining. To your way of thinking, is such a distinction viable under Ribicheck? No, I don't think that it's a suction dredge mine as opposed to some other type of placer mining method matter. Matters here, it's just that materials from stream banks or stream beds are being used to mine for gold and then added back into the river. And then he also argues, of course, that the two Supreme Court cases require us under Miller v. Gamie to, if you will, ignore Ribicheck. What's your response to that? Yeah, they address a very different situation, and I'd gladly explain that. And just to be clear about what this court said in Ribicheck, it said – this is, again, on page 1285 – quote, even if the material discharged originally comes from the stream bed itself, such resuspension may be interpreted to be an addition of a pollutant under the act, end quote. And this makes sense. The riverbed material itself – there's two ways to think about how it could be added under the Clean Water Act. One is if it's coming from somewhere else. And another is, if the riverbed material itself is not a pollutant, but upon being dredged, processed, and discharged into the river, it then becomes a pollutant, the riverbed, the bed of a lake, the bed of an ocean, as they're just sitting out there – those materials are not pollutants. It's only if they are extracted, reinserted into the water in some way, and become suspended in the water column that those have then become a pollutant. So they've been – even if you were to say that the riverbed is part of the water, it's not just the addition of riverbed materials that matters. It's the addition of a pollutant. And that's what this court said in Rybichek. Even though the material originally came from the stream bed, as it's being added back into the water, it is a pollutant. It's adding pollutants to the water that wasn't there before. You can see this with Mr. Pro's dredging. You can see the relatively clean south fork of the Clearwater River flowing downstream. And you can see the discharge from his dredge and the cloudiness and turbidity and suspended sediments. They used to be inert materials in the riverbed. After he dredges them, they become pollution where they're suspended in the water column and having the impacts that sediment pollution has. And Rybichek holds that. And to look more closely at Miccosukee and Los Angeles County, if we look at what the issue was in Los Angeles County, this is 568 U.S. 78, the Supreme Court decision. On page 82, we granted certiorari on the following question. Under the Clean Water Act, does a discharge of pollutants occur when polluted water flows from one portion of a river that is a navigable water of the United States, through a concrete channel or other engineered improvement in the river, and then into the lower portion of the same, end quote? And slightly further down, the court says, quote, under a common understanding of the meaning of the word add, no pollutants are added to a water body when water is merely transferred between different portions of that water body, end quote. And it's easy to imagine a hypothetical here where Mr. Poe is just doing that with his dredge. Suppose, if you will, that there's an eddy in the river. You know, a lot of the current's continuing on downstream, but part of it sort of swirls off to the side. And imagine, as part of that swirling, sediments get stirred up from the bank or from the bed and in the eddy of cloudy water that's polluted with sediments, whereas the rest of the river's pretty clean. If Mr. Poe were to place his dredge there on the boundary between the eddy and the rest of the river, suck up eddy water with the suspended sediments in it, discharge them off the back of his dredge without touching the stream bed, there he'd be simply transferring that sort of mucky eddy water to the rest of the river, maybe analogously to what was going on in Los Angeles County and Miccosukee. And that's not what he's doing here. He's burrowing into the riverbed. He's extracting things that were lying inert under the river using crowbars. Some parts were so compacted and locked in place that a 6-foot crowbar wasn't enough to do the trick, and he had to resort to using other tools like a high-powered blaster nozzle. It's not at all like merely transferring water, as was stated in the Los Angeles County case. Any other questions on addition of a pollutant? If not, I can move on to the 402 versus 404 issue. A little clarification on Core, Alaska. Fact's very different there. It did involve mining, but it involved a massive mine and taking the mine tailings from that massive mine and filling a lake. In that situation, EPA and the Army Corps all agreed that that was fill material that they were filling the lake with, and it required a 404 permit from the Corps. Supreme Court deferred to EPA and the Corps and said that was a reasonable interpretation of the regulations defining fill material as opposed to other types of pollutants, and that's what we're asking you to do here, and this is what the Oregon Supreme Court did in the Eastern Oregon Mining Association case that addressed the same issue. Your opposing counsel, if I understood him correctly, is saying that, notwithstanding what Rybacek says, that they just analyzed it the wrong way. If you look at the statute, it's not in big use. It's clear, and therefore, we should analyze it differently. What's your response to that? Do you mean on the issue of whether there's an addition of any kind of pollutant? Correct. It is ambiguous. Again, as I started, you know, the Clean Water Act prohibits the discharge of pollutants, which is defined as the addition of pollutants to a water in the United States. I think that term is ambiguous as all these cases that are relied on throughout the briefing interpreting addition. I don't think any of them has found a clear answer as to what an addition is. The EPA and the Corps have also interpreted it as being ambiguous, right? The term addition? Yes. Yes. And that's part of how they allocated their respective responsibilities. Well, and that doesn't have to do with the term addition, though. It has to do with what's being added. So... Pollution issue, right? Whether it's dredged or fill material or all the other pollutants that EPA regulates, for either one of those, you need an addition. So if you were to rule in Mr. Poe's favor that there's no addition here, you wouldn't even need to get to the issue of which type of pollutant it is. You'd be saying there's no pollutant being added, no permits needed from either the Corps or EPA. And that's where RivaCheck stands in their way. On the issue of addition and saying, yes, this is an addition of a pollutant, even though the materials originated in the streambed. But on the issue of 402 versus 404, EPA and the Corps have long agreed that plaster mining waste, including from suction dredges, is regulated under 402. We cited various guidance and things, including a 1990 regulatory guidance letter from the Army Corps. It's at 1 SCR 296. And I think it's a little helpful to see what the Corps said there. They said that once a dredge material is, quote, subsequently processed to remove desired elements, its nature has been changed, end quote. And, quote, it is no longer dredge material. In another sentence, it says, the raw materials associated with plaster mining operations are not being excavated simply to change their locations as a normal dredging operation. The residue of this processing should be considered waste, end quote. Mr. Poe's argument is that he's using a dredge to dredge up materials. And the only interpretation of the Clean Water Act or the Clean Water Act regulations is that, when he's dumping that back into the water, it's dredged material. But that's not correct, even though it may be true that initially he's dredging those materials as he brings them up to his dredge. He's then processing them. And that's what this Corps guidance explains. Once something is processed, it might no longer be a dredge material. A bit of an extreme example, but imagine there's uranium in the bottom of the river, and Mr. Poe sucks that up through his dredge, operates a little, you know, nuclear enrichment program, and has a bunch of radioactive uranium waste. If he dumps that back in the river, I think we can all agree that that might be a different kind of pollutant than just a dredged material. Dredged materials that the Corps regulates are things that are scooped up, dredged up, and moved somewhere else. The recent Fourth Circuit Gaston decision actually has a pretty helpful discussion about dredged materials and the Corps' responsibility under the Clean Water Act. That's 76 F. 4th 291, 2023 decision. On page 303, the Corps provides definitions of what dredge spoil is. It's – you know, dredging is removing sand, silt, mud from the bottom of a river to enlarge or clean out a river or a channel or a harbor. And, yeah, dredge spoil is the accumulated result of excavation or land-altering activities. So dredging – scooping things up, moving them somewhere else to either enlarge a channel or prepare for construction or something – that's what the Corps regulates for the discharge of dredged material. And getting back to addition, if you were to accept Mr. Poe's argument that riverbed, lakebed, oceanbed materials can never be the addition of a pollutant when they're put in the water, that would totally conflict with Section 404 of the Clean Water Act. That's the section that says, for dredge and fill discharges, the Corps issues permits. You wouldn't need a dredging permit if Mr. Poe's argument was right. The things dredged from the streambed and moved elsewhere in the water to create a channel, as the Corps normally regulates through 404. Those permits wouldn't be necessary. Those wouldn't – no one would ever be adding dredged material. And, yeah, to just kind of sum things up and remind why we're here, Mr. Poe is a professional gold miner. He came to Idaho in 2014 – 2015 and 2018 well aware that EPA required 402 permits to authorize dredging in the state of Idaho. He knew that. He refused to comply. As we've documented thoroughly in the record, he came to Idaho to take a stand against EPA. And here in court, he's asking you to ignore court decisions, ignore the Clean Water Act and the Clean Water Act regulations and how those have been interpreted, and to instead adopt his preferred interpretation of the Clean Water Act and to let him off the hook for polluting the South Fork of the Clearwater River without a permit. If you don't have any further questions, I'm done. MS. NANCY LENOX.    MS. NANCY LENOX. Mr. Garrison. MR. GARRISON. Thank you, Your Honors. My friend on the other side talked about RIBOCHEC and what it held. It held that the re-suspension of pollutants in the water body may be the addition of a pollutant. It did not hold that there was an addition of a pollutant because the materials came from somewhere else or there was an increase in materials. The court in Miccosukee Tribe and L.A. County both applied the ordinary meaning, citing dictionary definitions that talked about the increase of pollutants to the water. It simply does not happen with suction dredge mining. And my friend on the other side mentioned the recent decision in Gaston where there was a claim that trawling nets on the river or in the ocean's floor, the bed, and kicking up and re-suspending sediments was not the addition of a pollutant, and it cited L.A. County. If the other side says you wouldn't need a permit at all to dredge and fill if just scooping it up and putting it somewhere else is not the addition of a pollutant, that's correct, isn't it? I'm not sure I get that. So you dredge, you move the stuff and put it back in the river, you've dredged and filled, and if that's not the addition of a pollutant, you don't need a 404 permit, right? Not for that activity. So in normal dredging operations, you dredge and then you deposit it somewhere else. And there's incidental fallback exceptions within the 404 permitting program that address that. So it's not going to completely obliterate 404 if you find that just dredging something and then returning it to the same water body is not the addition of a pollutant. Well, is it an addition of pollutant? You're deepening a port, you dredge it, you put it back in the water, does that require a permit? Under 404 or 402? Under 404. Under 404, it could require a permit. Then it's an addition of a pollutant because 404 doesn't apply unless there's an addition of pollutant too, right? No, 402 and 404, are you saying that... Both require the addition of a pollutant. That's correct. So he's correct that if you just dredge the port and put the stuff back in the water, if you're right that that can never be the addition of a pollutant, they don't even need a 404 permit to do that. They wouldn't need a 404 permit to do that. And you think that's the case now? You can dredge the port and put the stuff back in the water downstream and that doesn't take a permit? If there's no addition of a pollutant, yes. Because 402 and 404 address the discharge of a pollutant, which is defined as the addition of a pollutant. Okay. I would just like to sum up and say that the Supreme Court provided the regulated public and lower courts with guidance over the ordinary meaning of addition. The district court failed to apply the ordinary meaning in this case. This court therefore should reverse and find Mr. Poe did not violate the Clean Water Act because he did not discharge pollutants into the South Fork Clearwater River. And alternatively, the district court should be reversed because Mr. Poe's suction dredge mining, if it adds materials to regulated waters, adds dredge material. There was no processing of the materials. They did not transform into something else. They were the same materials that were dredged from the bottom of the South Fork that were returned to the water. The district court should be reversed on that score too. Thank you. All right. Thank you, counsel. Idaho Conservative League versus Poe is submitted. And Dubina versus Garland has previously been submitted. So this session of the court is adjourned for today. Thank you.
judges: WARDLAW, SMITH, UNKNOWN